990 So.2d 1258 (2008)
Tywan D. STABLER, Appellant,
v.
STATE of Florida, Appellee.
No. 1D06-4555.
District Court of Appeal of Florida, First District.
September 26, 2008.
Nancy A. Daniels, Public Defender; David P. Gauldin and David A. Davis, Assistant Public Defenders, Tallahassee, for Appellant.
Bill McCollum, Attorney General; Trisha Meggs Pate, Christine Ann Guard, and Charmaine M. Millsaps, Assistant Attorneys General, Tallahassee, for Appellee.
ROBERTS, J.
The appellant, Tywan Stabler, appeals the trial court's denial of his motion to suppress cocaine found by police pursuant to a search warrant. The appellant argues that the Fourth Amendment to the United States Constitution does not permit a warrantless dog sniff of the exterior door of an apartment. We disagree and affirm.

FACTS
Officers received information that several people, including the appellant and his *1259 girlfriend, were trafficking cocaine and liquid codeine. Based upon this information, officers initiated surveillance of the appellant's residence and his girlfriend's apartment. During the surveillance of the appellant's residence, officers observed the appellant leave in a vehicle driven by another subject. The officers followed the vehicle and conducted a stop.[1] During the stop, a police drug dog alerted to the odor of drugs in the vehicle. A search of the vehicle revealed a baby bottle of what appeared to be liquid codeine. With his consent, officers subsequently searched the appellant's residence but found no evidence of drug trafficking.
During this time, officers continued surveillance of the appellant's girlfriend's apartment. During the surveillance, officers interviewed the manager and other residents of the apartment complex. The manager and the other residents reported that the appellant's girlfriend lived in the complex and that the appellant was often present. They also reported that the appellant and other suspicious subjects often came and went late at night, staying only a short time and sometimes switching vehicles.
The front door of the apartment was open to public access and to a common area. Officers brought a police drug dog to the front door of the apartment and it alerted to drugs. Officers also took the dog to the front door of another apartment in the complex where it did not alert to drugs.
Based upon the information they had gathered during their surveillance of the apartment, officers prepared a probable cause affidavit and subsequently received a search warrant for the apartment. During the search, cocaine was found. The appellant was arrested and charged with trafficking in 400 grams or more, but less than 150 kilograms, of cocaine in violation of section 893.03(2)(a)4, Florida Statutes (2005). Prior to trial, the appellant filed a motion to suppress the cocaine, arguing that the search warrant was issued without probable cause. At the hearing on the motion, the trial court ruled that the dog sniff did not violate the Fourth Amendment and that, without considering the dog sniff, the other information presented in the probable cause affidavit would not support the issuance of a search warrant. The appellant subsequently pled no contest, reserving the right to appeal the trial court's denial of his motion.

ANALYSIS
This Court has explained the standard of review applicable to a trial court's ruling on a motion to suppress:
A trial court's ruling on a motion to suppress is a mixed question of fact and law. The standard of review of the findings of fact is whether competent, substantial evidence supports the findings. Findings of historical fact should be reviewed only for "clear error," with "due weight to be accorded to inferences drawn from those facts" by the lower tribunal. We must construe all the evidence, and reasonable inferences therefrom, in a manner most favorable to sustaining the trial court's ruling.
Hines v. State, 737 So.2d 1182, 1184 (Fla. 1st DCA 1999) (citations omitted). Furthermore, when the trial court
[b]ase[s] its decision to grant the motion to suppress solely on an examination of the affidavit, and without an evidentiary hearing, the issue of whether the State *1260 established probable cause sufficient to obtain a search warrant presents a question of law that is reviewable using a de novo standard.... [W]e must [give] "great deference" to the issuing judge's determination that probable cause existed (provided there is a substantial basis for the determination)....
State v. Felix, 942 So.2d 5, 8 (Fla. 5th DCA 2006) (citing Pagan v. State, 830 So.2d 792 (Fla.2002); United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Significantly, this Court is constitutionally required to interpret search and seizure issues in conformity with the Fourth Amendment of the United States Constitution, as construed by the United States Supreme Court. See Art. I, § 12, Fla. Const.; Perez v. State, 620 So.2d 1256 (Fla.1993).

THE FOURTH AMENDMENT AND POLICE DRUG DOG SEARCHES
The appellant argues that the trial court erred in denying his motion to suppress because the dog sniff at the front door of the apartment constituted an illegal search under the Fourth Amendment and, thus, could not be used as evidence of probable cause for the search warrant. This contention, however, lacks merit.
As pointed out by the State, the United States Supreme Court recently addressed the issue of whether a dog sniff constitutes a search. In Illinois v. Caballes, 543 U.S. 405, 410, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), the Court held that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Explicitly reaffirming its prior reasoning that the unique nature of a dog sniff renders it distinguishable from a traditional search, the Court stated:
[T]he use of a well-trained narcotics-detection dogone that "does not expose noncontraband items that otherwise would remain hidden from public view"during a lawful traffic stop, generally does not implicate legitimate privacy interests. In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement.
Id. at 409, 125 S.Ct. 834 (quoting United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (holding that "the particular course of investigation that the agents intended to pursue hereexposure of respondent's luggage, which was located in a public place [airport], to a trained caninedid not constitute a `search' within the meaning of the Fourth Amendment")). Considering that Caballes and Place represent the only two cases in which the Court has endeavored to address the dog sniff issue, the reasoning espoused therein is controlling and must guide this Court's ruling in the instant case.
In support of his contention that a dog sniff is a search, the appellant cites State v. Rabb, 920 So.2d 1175 (Fla. 4th DCA 2006), review denied, 933 So.2d 522 (Fla. 2006), cert. denied, ___ U.S. ___, 127 S.Ct. 665, 166 L.Ed.2d 513 (2006), in which the Fourth District held that a dog sniff at the front door of a house violated the Fourth Amendment. Such reliance, however, is misplaced as the court's holding is contrary to United States Supreme Court precedent. The court's inconsistencies stem from its decision to base its Fourth Amendment analysis on the location of the search rather than the target of the search. Applying this questionable logic, *1261 the Fourth District found Place and Caballes distinguishable because the dog sniffs in those cases occurred at public locations (a public airport and a public road), rather than a private residence as it did in Rabb. Rabb, 920 So.2d at 1183, 1188-89, 1192.
Relying on United States v. Thomas, 757 F.2d 1359 (2d Cir.1985), for the proposition that individuals have a legitimate expectation that even contraband items hidden in their dwelling will not be revealed, the Fourth District concluded that Kyllo v. United States, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), was controlling because it held that the use of thermal imaging technology to detect heat emanating from a private house constituted a search. Rabb, 920 So.2d at 1182-83. According to the court, using a thermal imager to discern the relative warmth of a house is analogous to using a dog sniff to detect the essence of marijuana in a house since "the smell of marijuana had its source in Rabb's house, it was an `intimate detail' of that house, no less so than the ambient temperature inside Kyllo's house." Id. at 1184. Further justifying its reliance on Kyllo, the court specifically stated that "it is of no importance that a dog sniff provides limited information regarding only the presence or absence of contraband." Rabb, 920 So.2d at 1184.
We disagree with the holding in Rabb. Neither Caballes nor Place turned on the location of the dog sniff but rather on the target of the dog sniff and the unique nature of a dog's nose: "a canine sniff by a well-trained narcotics-detection dog [is] `sui generis' because it `discloses only the presence or absence of narcotics, a contraband item.'" Caballes, 543 U.S. at 409, 125 S.Ct. 834 (quoting Place, 462 U.S. at 707, 103 S.Ct. 2637). Moreover, Thomas has been rightly criticized as contrary to United States Supreme Court precedent "indicat[ing] that a possessor of contraband can maintain no legitimate expectation that its presence will not be revealed. No legitimate expectation of privacy is impinged by governmental conduct that can reveal nothing about noncontraband items." Nelson v. State, 867 So.2d 534, 536 (Fla. 5th DCA 2004) (citing United States v. Jacobsen, 466 U.S. 109, 123, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)); see also United States v. Lingenfelter, 997 F.2d 632, 638 (9th Cir.1993) ("Because Thomas rests on an incorrect statement of the law, we expressly reject its reasoning."); Caballes, 543 U.S. at 408, 125 S.Ct. 834 ("Official conduct that does not `compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment."). Thus, contrary to the Fourth District's reasoning, contraband can never be an intimate detail of a house. Furthermore, although a dog's unique ability to conduct a binary search (one which reveals only the presence or absence of contraband) was deemed insignificant in Rabb, it was essential in Caballes:
[Our holding here] is entirely consistent with our recent decision [in Kyllo] that the use of a thermal-imaging device to detect the growth of marijuana in a home constituted an unlawful search. Critical to that decision was the fact that the device was [also] capable of detecting lawful activityin that case, intimate details in a home, such as "at what hour each night the lady of the house takes her daily sauna and bath." The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband in the trunk of his car.
Caballes, 543 U.S. at 409-10, 125 S.Ct. 834 (quoting Kyllo, 533 U.S. at 38, 121 S.Ct. 2038).
Thus, in departing from our sister court's reasoning in Rabb, we find persuasive the Fourth Amendment analysis conducted *1262 by the Seventh Circuit in United States v. Brock, 417 F.3d 692 (7th Cir. 2005). In Brock, the defendant and two other individuals each rented a separate room in a three-bedroom house. In the defendant's absence, one of his roommates consented to a search of the house's common areas. Subsequently, a police drug dog alerted to the presence of narcotics while standing in a common hallway just outside the defendant's locked bedroom door. Based upon the information they had received, officers sought and received a search warrant for the entire residence. Id. at 693-94.
On appeal, the defendant asserted that the trial court erred in denying his motion to suppress, arguing that the dog sniff outside his locked bedroom door constituted an illegal warrantless search and that, as a result, the warrant to search his residence violated the Fourth Amendment. Id. at 695. Upon analyzing the United States Supreme Court's Fourth Amendment jurisprudence, the Seventh Circuit reiterated the reasoning in Caballes that, since there is no legitimate privacy interest in possessing contraband, the use of a well-trained drug dog that reveals only the possession of narcotics does not violate the Fourth Amendment. Brock, 417 F.3d at 695. The court explained that Caballes relied upon Place for the proposition that a canine sniff is sui generis because the information obtained through this investigative technique simply reveals the presence or absence of narcotics. Brock, 417 F.3d at 695. Finally, the court found that Jacobsen explicitly reaffirmed Caballes in holding that a chemical field test "was not a Fourth Amendment search because the test `merely discloses whether or not a particular substance is cocaine.' As there is no legitimate interest in possessing cocaine, the field test did not compromise any legitimate privacy interest." Brock, 417 F.3d at 695 (quoting Jacobsen, 466 U.S. at 123, 104 S.Ct. 1652).
Similar to the appellant's argument in the instant case, the defendant in Brock attempted to distinguish these cases by relying on Kyllo for the proposition that an individual has a far greater privacy interest inside a home, particularly inside a bedroom, than one has in a car or public place. Brock, 417 F.3d at 695. However, the court explicitly rejected this assertion, stating that Kyllo did not support the defendant's position. Brock, 417 F.3d at 696. Although Kyllo did reaffirm the importance of the privacy interest in one's home, the Seventh Circuit was primarily influenced by the subsequent clarification of Kyllo in Caballes: "[I]t was essential to Kyllo's holding that the imaging device was capable of detecting not only illegal activity inside the home, but also lawful activity. . . . As the Court emphasized, an expectation of privacy regarding lawful activity is `categorically distinguishable' from one's `hopes or expectations concerning the nondetection of contraband. . . .'" Brock, 417 F.3d at 696 (quoting Caballes, 543 U.S. at 409-10, 125 S.Ct. 834).
Consistent with its sister courts, the Seventh Circuit also criticized Thomas by concluding that "[w]hatever subjective expectation [the defendant] . . . had that his possession of narcotics would remain private, that expectation is not one `that society is prepared to consider reasonable.'" Brock, 417 F.3d at 697 (quoting Jacobsen, 466 U.S. at 113, 104 S.Ct. 1652). In accord with this reasoning, the Seventh Circuit held that a dog sniff inside the defendant's residence did not constitute a Fourth Amendment search because it merely detected the presence of contraband and "did not provide any information about lawful activity over which [the defendant] had a legitimate expectation of privacy." Brock, 417 F.3d at 696. Significantly, the fact that the officers were lawfully present in the common hallway when they conducted the dog sniff was critical to the court's holding. Id. at 697.
*1263 Based on the foregoing, we find that the appellant had neither a legitimate interest in possessing the cocaine, nor a legitimate expectation that the cocaine hidden in the apartment would not be revealed. Moreover, the binary nature of a dog sniff renders it unique in that it is distinguishable from traditional search methods. Thus, we conclude that the dog sniff at the front door of the apartment did not constitute a Fourth Amendment search because it did not violate a legitimate privacy interest. Paramount to this conclusion is the fact that the dog was located on a common walkway within the apartment complex when the sniff occurred.
Adhering to this reasoning, we find that it was proper for the trial court to consider evidence of the dog sniff in determining that probable cause existed to support the search warrant. Therefore, we hold that the trial court did not err in denying the appellant's motion to suppress.
Additionally, we certify that this opinion directly and expressly conflicts with the Fourth District's decision in State v. Rabb, 920 So.2d 1175 (Fla. 4th DCA 2006).
AFFIRMED.
KAHN and WEBSTER, JJ., concur.
NOTES
[1] The reason for the stop is not in the record, nor was the legality of the stop challenged in this case.