Jonathon HOOP, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0807–CR–666.

Court of Appeals of Indiana.

July 14, 2009.

Rehearing Denied Oct. 6, 2009.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Jonathon Hoop brings this interlocutory appeal from the denial of his motion to suppress. The challenged evidence was seized during the execution of a search warrant, which was issued after an officer had a drug-detecting dog sniff the front door of Hoop's residence. We conclude that under Article 1, Section 11 of the Indiana Constitution, an officer needs reasonable suspicion to conduct a dog sniff of a private residence. Even if that requirement was not met in this case, the officers relied on the warrant in good faith. Therefore, we affirm.

### FACTS AND PROCEDURAL HISTORY

On July 26, 2007, Sergeant Jason Bradbury swore out an affidavit to obtain a search warrant for Hoop's residence. The affidavit stated, in relevant part:

> A confidential credible and reliable informant (C.I.) personally told your affiant that there was a marijuana growing operation at 739 Churchman Ave. Beech Grove, Marion County, Indiana. The C.I. stated that he/she was inside the residence in early May 2007 and smelled what he/she knew to be marijuana that was being cultivated. The C.I. also observed several items of paraphernalia that [are] used to ingest marijuana. The C.I. stated that the residence was under the control of a white male, Jonathon Hoop [birth date deleted].

A check of public utility records showed that the residence had power in the name of Jonathon Hoop. The power usage also showed that since Jonathon Hoop moved into the residence that the

power used was higher than the previous occupant. A drivers license check was [run] on Jonathon Hoop and it showed that he had an address of 739 Churchman Ave. Beech Grove, Marion County, Indiana.

Based on the above information a "free air" sniff was conducted on 739 Churchman Ave. Beech Grove, Marion County, Indiana. The sniff was conducted July 26th, 2007. Det. Jeff Krider and his K–9 partner "Sonny" sniffed the front door of the residence. "Sonny" had a distinct behavior change while sniffing the front door of 739 Churchman Ave. Beech Grove, Marion County, Indiana. This behavior change is consistent with the K–9's detection of the odor of a controlled substance.

Det. Krider has been employed with the Indianapolis Metropolitan Police Department for eighteen (18) years and is currently assigned to the Metropolitan Drug Task Force. Det. Krider and "Sonny" have received specialized training as a narcotics detection team in the odors of controlled substances. Det. Krider and Sonny are certified as a team annually with the last certification in March of 2007 with 100% accuracy. "Sonny["] is trained in the detection of marijuana, cocaine, heroin and methamphetamine.

The C.I. is credible and reliable due to the fact that revealing his/her identity could endanger the life of the C.I. and destroy any further use of the C.I. The C.I. is credible and reliable due to the fact that he/she has led to the seizure of narcotics on more than three (3) occasions and led to arrest on more than three (3) occasions. The C.I. is also familiar with marijuana growing operations and the particular odor associated with a marijuana grow and has smelled that odor on several other prior occasions. The C.I. has also provided information that has led to the seizure of one (1) indoor marijuana grow.

Through your affiant[']s training and experience, fourteen (14) years as an employee of the Sheriff[']s Department and approximately six (6) years as a narcotics investigator, he is aware that marijuana growing is an ongoing operation and that based on the above information your affiant is requesting a search warrant be issued for 739 Churchman Ave. Beech Grove, Marion County, Indiana.

(Defendant's Ex. A.)

A search warrant was issued, and it was executed on July 27, 2007 by members of the Metropolitan Drug Task Force. They allegedly found 140 marijuana plants, several bags of marijuana, a digital scale with marijuana residue, cash, and firearms. Hoop was charged with Class D felony dealing in marijuana[1] and Class D felony possession of marijuana.[2]

On October 29, 2007, Hoop filed a motion to quash warrant and motion to suppress. A hearing was held on April 7, 2008. Sergeant Bradbury testified he was present when Detective Krider walked his dog, Sonny, "up to the front door under the porch," where Sonny "alerted to a narcotic odor inside the door." (Tr. at 18.) The officers did not have a warrant authorizing the dog sniff and did not have the homeowner's permission to walk onto the property.

On June 2, 2008, the trial court denied Hoop's motion. The trial court certified its order for interlocutory appeal, and we accepted jurisdiction.

---

**1.** Ind.Code § 35–48–4–10.

**2.** Ind.Code § 35–48–4–11.

## DISCUSSION AND DECISION

The Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution require warrants to be supported by probable cause. *Edwards v. State,* 832 N.E.2d 1072, 1077 (Ind.Ct.App.2005). The task of the issuing magistrate is to "make a practical, commonsense decision" whether, in light of all the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* A reviewing court determines whether the magistrate had a "substantial basis for concluding that probable cause existed." *Id.* "While the determination of reasonable suspicion and probable cause requires de novo review on appeal, a trial court's determination of historical fact is entitled to deferential review." *Myers v. State,* 839 N.E.2d 1146, 1150 (Ind.2005) (citing *Ornelas v. United States,* 517 U.S. 690, 695–99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Hoop argues the dog sniff of his door violated his rights under the Fourth Amendment and Art. 1, § 11 of the Indiana Constitution, and the remaining evidence was insufficient to establish probable cause to issue the search warrant.

### 1. *Fourth Amendment*

■ Hoop contends the dog sniff of his door is a search within the meaning of the Fourth Amendment, and therefore the officers were required to have a warrant before bringing the dog up to his home. He relies on *United States v. Thomas,* 757 F.2d 1359 (2d Cir.1985), *cert. denied sub nom. Wheelings v. United States,* 474 U.S. 819, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985).

In *Thomas,* the Drug Enforcement Agency obtained a warrant to search Wheelings' apartment based in part on a dog sniff conducted outside his apartment. The Second Circuit noted the Supreme Court's holding in *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) that a dog sniff of luggage in an airport was not a search within the meaning of the Fourth Amendment. However, the Second Circuit distinguished *Place* based on the heightened privacy interest in one's home:

It is one thing to say that a sniff in an airport is not a search, but quite another to say that a sniff can *never* be a search. The question always to be asked is whether the use of a trained dog intrudes on a legitimate expectation of privacy. While one generally has an expectation of privacy in the contents of personal luggage, this expectation is much diminished when the luggage is in the custody of an air carrier at a public airport.

We have recognized the heightened privacy interest that an individual has in his dwelling place.

\*    \*    \*    \*    \*    \*

Although using a dog sniff for narcotics may be discriminating and unoffensive relative to other detection methods, and will disclose only the presence or absence of narcotics, it remains a way of detecting the contents of a private, enclosed space. With a trained dog police may obtain information about what is inside a dwelling that they could not derive from the use of their own senses. Consequently, the officers' use of a dog is not a mere improvement of their sense of smell, as ordinary eyeglasses improve vision, but is a significant enhancement accomplished by a different, and far superior, sensory instrument. Here the defendant had a legitimate expectation that the contents of his closed apartment would remain private, that

they could not be "sensed" from outside his door.

*Id.* at 1366–67 (citations omitted).

*Thomas* has been roundly criticized. The Sixth Circuit provided the following critique of *Thomas'* reasoning:

> *Thomas* seems to stand alone in its pronouncement that a canine sniff may constitute an unreasonable search. According to the *Thomas* court, the heightened privacy interest in a dwelling place renders a canine sniff intrusive on the inhabitant's expectation of privacy, even with respect to contraband. Yet, this holding ignores the Supreme Court's determination in *Place* that a person has no legitimate privacy interest in the possession of contraband, thus rendering the location of the contraband irrelevant to the Court's holding that a canine sniff does not constitute a search. Indeed, the Court later explained that "the *reason* [the *Place* canine sniff] did not intrude upon any legitimate privacy interest was that the governmental conduct could reveal nothing about noncontraband items." [*United States v.] Jacobsen*, 466 U.S. [109, 124 n. 24, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)].[3] In short, there is no legitimate interest in "privately" possessing cocaine.

*U.S. v. Reed,* 141 F.3d 644, 649–50 (6th Cir.1998) (some citations omitted).[4]

**3.** In *Jacobsen,* a private freight carrier observed a white powder coming from a damaged package and contacted a federal agent. The agent removed a trace of the powder and performed a chemical test that indicated the substance was cocaine. The Court held the test was not a search: "Here, as in *Place,* the likelihood that official conduct of the kind disclosed by the record will actually compromise any legitimate interest in privacy seems much too remote to characterize the testing as a search subject to the Fourth Amendment." *Jacobsen,* 466 U.S. at 124, 104 S.Ct. 1652.

**4.** Other cases criticizing or rejecting *Thomas* include United States v. Brock, 417 F.3d 692, 697 (7th Cir.205); *United States v. Roby,* 122 F.3d 1120, 1124–25 (8th Cir.1997), *rehearing and rehearing en banc denied; United States v. Lingenfelter,* 997 F.2d 632, 638 (9th Cir.1993); *United States v. Colyer,* 878 F.2d 469, 475 (D.C.Cir.1989); *United States v. Broadway,* 580 F.Supp.2d 1179, 1189 (D.Colo.2008); *United States v. Meindl,* 83 F.Supp.2d 1207, 1217 (D.Kan.1999); *United States v. Marlar,* 828 F.Supp. 415, 418 (N.D.Miss.1993); *United States v. Cota–Lopez,* 358 F.Supp.2d 579, 592 (W.D.Tex.2002), *aff'd* 104 Fed.Appx. 931 (5th Cir.2004); *State v. Waz,* 240 Conn. 365, 692 A.2d 1217, 1224 n. 21 (1997); *People v. Guenther,* 225 Ill.App.3d 574, 167 Ill.Dec. 705, 588 N.E.2d 346, 350 (1992); *State v. Lee,* 715 So.2d 582, 584 n. 1 (La.Ct.App.1998), *writ denied* 728 So.2d 1285 (La.1998); *Fitz-* *gerald v. State,* 384 Md. 484, 864 A.2d 1006, 1016 (2004), *reconsideration denied; People v. Jones,* 279 Mich.App. 86, 755 N.W.2d 224, 228 n. 3 (2008); *State v. Davis,* 732 N.W.2d 173, 178 n. 9 (Minn.2007); *People v. Dunn,* 77 N.Y.2d 19, 563 N.Y.S.2d 388, 564 N.E.2d 1054, 1056–57 (1990), *cert. denied* 501 U.S. 1219, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991); *State v. Smith,* 327 Or. 366, 963 P.2d 642, 647 (1998); *Porter v. State,* 93 S.W.3d 342, 346–47 (Tex.Crim.App.2002), *petition for discretionary review refused; State v. Miller,* 256 Wis.2d 80, 647 N.W.2d 348, 351 n. 5 (Wis.Ct.App.2002), *review denied* 257 Wis.2d 118, 653 N.W.2d 890 (2002), *cert. denied* 538 U.S. 951, 123 S.Ct. 1637, 155 L.Ed.2d 496 (2003). *See also United States v. Esquilin,* 208 F.3d 315, 318 (1st Cir.2000) (important factor in applying Place is not whether sniff occurs in public place, but whether the dog is legally present at the place where the sniff occurs).

*But see State v. Rabb,* 920 So.2d 1175, 1183–86 (Fla. 4th Dist.Ct.App.2006) (following *Thomas* ), *review denied* 933 So.2d 522 (Fla. 2006), *cert. denied* 549 U.S. 1052, 127 S.Ct. 665, 166 L.Ed.2d 513 (2006), *disagreed with by Stabler v. State,* 990 So.2d 1258, 1260–61 (Fla. 1st Dist.Ct.App.2008); *State v. Ortiz,* 257 Neb. 784, 600 N.W.2d 805, 807 (Neb.1999) (followed *Thomas* and concluded Fourth Amendment and Nebraska Constitution required officers to have reasonable, articulable suspicion before having dog sniff for drugs at threshold of a dwelling).

Hoop compares his case to *Kyllo v. United States,* 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). Suspecting that Kyllo was using high-intensity lamps to grow marijuana in his home, an agent used a thermal imaging device to determine the amount of heat emanating from Kyllo's home. The scan took a few minutes and was performed from the agent's vehicle, which was parked across the street from Kyllo's home. The Supreme Court concluded that use of the thermal imaging device was an unlawful search. *Id.* at 40, 121 S.Ct. 2038.

The Seventh Circuit, however, has rejected comparison of a dog sniff to the use of a thermal imaging device:

> [A]s the Court subsequently explained in [*Illinois v. Caballes* 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)],[5] it was essential to *Kyllo's* holding that the imaging device was capable of detecting not only illegal activity inside the home, but also lawful activity, including such intimate details as "at what hour each night the lady of the house takes her daily sauna and bath." As the Court emphasized, an expectation of privacy regarding lawful activity is "categorically distinguishable" from one's "hopes or expectations concerning the nondetection of contraband in the trunk of his car."

*United States v. Brock,* 417 F.3d 692, 696 (7th Cir.2005) (citations omitted).

■ As long as an officer is lawfully on the premises, the officer may have a dog sniff the residence without implicating the Fourth Amendment. *Reed,* 141 F.3d at 650; *Brock,* 417 F.3d at 697. "The route which any visitor to a residence would use is not private in the Fourth Amendment sense, and thus if police take that route for the purpose of making a general inquiry or for some other legitimate reason, they are free to keep their eyes open...." *Trimble v. State,* 842 N.E.2d 798, 802 (Ind.2006) (quoting 1 Wayne R. LaFave, *Search and Seizure: A Treatise on The Fourth Amendment* § 2.3(e), at 592–93 (4th ed.2004)). "Just as evidence in the plain view of officers may be searched without a warrant, evidence in the plain smell may be detected without a warrant." *United States v. Roby,* 122 F.3d 1120, 1125 (8th Cir.1997) (citation omitted) (holding Fourth Amendment not implicated when officers brought dog into common hallway outside Roby's hotel room), *rehearing and rehearing en banc denied.* "The fact that the dog, as odor detector, is more skilled than a human does not render the dog's sniff illegal." *Id.* at 1124–25. Therefore, Detective Krider could lawfully approach Hoop's front door using the walkway that would ordinarily be used by any visitor, and the sniff did not implicate the Fourth Amendment. The dog sniff alone was sufficient to establish probable cause, *Reed,* 141 F.3d at 650, and the warrant was valid under Fourth Amendment.

### 2. *Art. 1, § 11*

■ The language of Art. 1, § 11 tracks the Fourth Amendment; however, "Indiana has explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure." *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind. 2005). Instead, the legality of a search "turns on an evaluation of the reasonable-

---

**5.** *Caballes* held a dog sniff during a traffic stop that did not extend the length of the stop did not implicate the Fourth Amendment: "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." 543 U.S. at 410, 125 S.Ct. 834.

ness of the police conduct under the totality of the circumstances." *Id.* Reasonableness is determined by balancing: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion imposed by the search; and (3) the extent of law enforcement needs. *Id.* at 361.

While a dog sniff is not a search in the meaning of the Fourth Amendment, we have consistently analyzed the reasonableness of dog sniffs under Art. 1, § 11. *See, e.g., State v. Quirk,* 842 N.E.2d 334, 340 (Ind.2006). We have approved of dog sniffs of vehicles lawfully stopped for a traffic violation. *State v. Gibson,* 886 N.E.2d 639, 643 (Ind.Ct.App.2008). We have also approved of a dog sniff of a package in the mail when delivery of the package was not substantially delayed. *Rios v. State,* 762 N.E.2d 153, 160–61 (Ind. Ct.App.2002). However, it does not appear that we have ever addressed the reasonableness of a dog sniff of a residence.

Hoop argues that under Art. 1, § 11, officers must have reasonable suspicion to conduct a dog sniff of a private residence. He compares his case to *Litchfield,* in which our Supreme Court held reasonable suspicion was required for a trash search. 824 N.E.2d at 364.

The State counters that *Litchfield* is distinguishable because a trash search may reveal private and innocent details, while a dog sniff will reveal only the presence or absence of contraband. However, the State's argument addresses only the "degree of intrusion" prong of the *Litchfield* test. The *Litchfield* Court held seizure of trash from "its usual location for pickup is no intrusion at all on the owner's liberty or property interests." *Id.* at 363. Nevertheless, the Court believed the danger of indiscriminate searches justified imposing a requirement of reasonable suspicion. *Id.* at 364.

*Litchfield* expressed concern about the possibility of police entering private property arbitrarily: "[P]olice should not be permitted to enter a person's property and search his or her garbage 'without reason.'" *Id.* at 363 (quoting *State v. Stamper,* 788 N.E.2d 862, 867 (Ind.Ct.App.2003)).

> [A]n important factor in evaluating a reasonable search is appropriate restriction on arbitrary selection of persons to be searched.... Allowing random searches, or searches of those individuals whom the officers hope to find in possession of incriminating evidence gives excessive discretion to engage in fishing expeditions.

*Id.* at 364.

*Litchfield* also reviewed previous Supreme Court decisions that expressed concern about excessive police discretion and arbitrary action:

> One factor that may render a search unreasonable is an arbitrary selection of the subject. Thus, we have permitted roadblocks for the purpose of testing for impaired drivers, but only under procedures that assure that no individual is subject to arbitrary selection. *State v. Gerschoffer,* 763 N.E.2d 960, 966 (Ind. 2002).... We have also upheld legislation requiring motorists to use seat belts, but we have warned that stopping vehicles to inspect for violations is not permissible without an individualized basis to suspect noncompliance. *Baldwin v. Reagan,* 715 N.E.2d 332, 334 (Ind. 1999).... In each case we ... required either articulable individualized suspicion or a process designed to prevent officers from indiscriminate selection of those to be searched.

> Even when officers have some indication of potential criminal activity, we have balanced it against a concern for excessive discretion in selection of a sub-

ject. In *State v. Bulington*, 802 N.E.2d 435 (Ind.2004), officers who stopped the driver of a vehicle suspected of methamphetamine manufacture based on purchases of packages of a known methamphetamine precursor did not have enough facts for individualized suspicion of criminal activity. The majority found the seizure unreasonable, concluding that if such a stop were allowed, the police would be given too much latitude to exercise arbitrary discretion. *Id.* at 440.

*Id.* at 360. *Cf. Linke v. Northwestern Sch. Corp.*, 763 N.E.2d 972 (Ind.2002) (permitting random drug testing of students).

■ As *Litchfield* placed overriding weight on the need to restrict arbitrary selection of persons to be searched, and that same concern is present here, we conclude reasonable suspicion is needed to conduct a dog sniff of a private residence.[6]

We turn now to the information known by the officers prior to the July 26, 2007 dog sniff. A confidential informant told Sergeant Bradbury he or she had smelled "marijuana that was being cultivated" in Hoop's residence "in early May 2007." (Defendant's Ex. A.) In addition, Sergeant

Bradbury determined that Hoop had used more power than the previous occupant.

■ Hoop challenges the value of this information, but the State does not address whether the tip and the information about Hoop's power usage establish reasonable suspicion. However, the State argues the officers relied on the warrant in good faith. We agree, and therefore we need not decide whether the officers had reasonable suspicion.

Generally a search conducted pursuant to an invalid warrant results in the suppression of any items seized. However, an exception has been carved out under both federal and Indiana law in which a search will be deemed valid if the State can show that the officer conducting the search relied in good faith upon a properly issued, but subsequently invalidated warrant. [*United States v. Leon*, 468 U.S. 897, 922 [,104 S.Ct. 3405, 82 L.Ed.2d 677] (1984)]; I.C. § 35-37-4-5. The good faith exception will not apply under the following circumstances: (1) the warrant is based on false information knowingly or recklessly supplied; (2) the warrant is facially deficient; (3) the issuing magistrate is

---

**6.** Several other states have reached the same conclusion under their own constitutions. *McGahan v. State*, 807 P.2d 506, 509–11 (Alaska Ct.App.1991) (dog sniff of a warehouse was a search and required reasonable suspicion); *People v. Haley*, 41 P.3d 666, 672, 674 (Colo.2001) (dog sniff is a search requiring reasonable suspicion); *People v. Cox*, 318 Ill.App.3d 161, 251 Ill.Dec. 133, 739 N.E.2d 1066, 1073 (2000) (dog sniff is a search requiring reasonable suspicion), *aff'd* 202 Ill.2d 462, 270 Ill.Dec. 81, 782 N.E.2d 275 (2002) (not addressing the state constitutional issue), *cert. denied* 539 U.S. 937, 123 S.Ct. 2574, 156 L.Ed.2d 622 (2003); *State v. Carter*, 697 N.W.2d 199, 211 (Minn.2005) (dog sniff outside a storage unit was a search requiring reasonable suspicion); *State v. Tackitt*, 315 Mont. 59, 67 P.3d 295, 302–03 (2003) (particularized suspicion required for dog sniff);

*State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805, 820 (1999) (reasonable suspicion required for dog sniff outside apartment); *State v. Pellicci*, 133 N.H. 523, 580 A.2d 710, 716–17 (1990) (plurality opinion) (dog sniff of vehicle is a search requiring reasonable suspicion); *People v. Dunn*, 77 N.Y.2d 19, 563 N.Y.S.2d 388, 564 N.E.2d 1054, 1058 (1990) (dog sniff outside apartment was a search requiring reasonable suspicion), *cert. denied* 501 U.S. 1219, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991); *Commonwealth v. Johnston*, 515 Pa. 454, 530 A.2d 74, 78–79 (1987) (dog sniff of storage unit was a search, which is permissible if officers have reasonable suspicion and are lawfully present). *See also State v. Dearman*, 92 Wash.App. 630, 962 P.2d 850, 854 (1998) (dog sniff of residence is a search requiring a warrant), *review denied* 137 Wash.2d 1032, 980 P.2d 1286 (1999).

not detached and neutral; or (4) the affidavit or sworn testimony upon which probable cause rests is so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420–21; *Doss v. State*, 649 N.E.2d 1045, 1047 (Ind.Ct.App. 1995).

*Lloyd v. State*, 677 N.E.2d 71, 74–75 (Ind. Ct.App.1997) (footnote omitted), *reh'g denied, trans. denied.*

There has been no allegation that the warrant was based on false information, the warrant was facially deficient, or the magistrate was not detached and neutral. Nor do we think the affidavit was "so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable." *Id.* at 75. The dog sniff alone would provide probable cause for a warrant, and the officers had no reason to think the sniff was unlawful.[7] The sniff was permissible under the great weight of authority under the Fourth Amendment. No case has squarely addressed the issue under Art. 1, § 11. Although we find support for a reasonable suspicion requirement in *Litchfield*, neither *Litchfield* nor previous opinions assessing the reasonableness of dog sniffs under Art. 1, § 11 clearly foreshadow the result in this case. Therefore, we conclude the officers reasonably relied on the magistrate's conclusion that the dog sniff was in accordance with the law. *See State v. Spillers*, 847 N.E.2d 949, 958 (Ind.2006) (after careful examination of existing case law, Court determined informant's statements were not against penal interest, but that officers relied on warrant in good faith; officers need only a reasonable knowledge of the law and are not required

to do extensive legal research before obtaining a warrant).

## CONCLUSION

The dog sniff did not implicate Hoop's Fourth Amendment rights. However, under Art. 1, § 11, the officers needed reasonable suspicion to conduct a dog sniff of his residence. Although the State has not argued the officers had reasonable suspicion, it has established the officers relied on the warrant in good faith. Therefore, the evidence should not be suppressed, and the trial court's ruling is affirmed.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.

**B.W., Appellant–Respondent,**

v.

---

7. Hoop briefly challenges the dog's qualifications; however, the information provided in the affidavit is similar to affidavits we found sufficient in *Rios v. State*, 762 N.E.2d 153, 159–60 (Ind.Ct.App.2002) and *Neuhoff v. State*, 708 N.E.2d 889, 891 (Ind.Ct.App.1999).