# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**GLEN E. KOCH II**
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KIMBERLY D. BLANKENSHIP, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 55A05-1307-CR-342 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Christopher L. Burnham, Judge
Cause No. 55D02-1112-FD-1510

**March 12, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE[1]

Kimberly D. Blankenship appeals her convictions for unlawful possession of a syringe, as a Class D felony, and maintaining a common nuisance, a Class D felony. Blankenship raises a single issue for our review, which we restate as whether the trial court abused its discretion when it admitted into evidence contraband found in Blankenship's hotel room that the police seized pursuant to a search warrant. We hold that the officers' reliance on the search warrant was objectively reasonable under Article 1, Section 11 of the Indiana Constitution and, as such, any defect in probable cause underlying the warrant does not render the evidence inadmissible under the exclusionary rule. Thus, we affirm the trial court's admission of the evidence.

## FACTS AND PROCEDURAL HISTORY

In 2011, employees of the Holiday Inn Express in Martinsville began finding drug paraphernalia in the hotel's rooms. Concerned that the hotel was "having a lot of problems with drug use," Donna Johns, a front desk manager at the hotel, requested the Martinsville Police Department to bring canine units to the hotel to conduct "free air sniffs in the common areas and hallways." Transcript at 56.

On December 1, 2011, at Johns' request Martinsville Police Department Officer Blake Long went to the hotel with his canine, Dasko. Dasko is trained to detect narcotics and to alert his handler when he has detected narcotics by sitting down.[2] Officer Long

---

[1] Blankenship has not included in her brief a copy of the order from which she appeals, contrary to Indiana Appellate Rule 46(A)(10).

[2] Blankenship points out that Dasko "is not trained to determine whether or not a person has a prescription." Appellant's Br. at 4.

and Dasko walked the main entrance area and the first-floor and third-floor hallways, areas that were randomly selected by Officer Long. On the third floor, Dasko alerted Officer Long to the presence of narcotics in room 328. Accordingly, Officer Long knocked on the door to that room, and Blankenship answered. Officer Long explained the situation and requested permission to enter the room, which Blankenship denied. Officer Long observed that Blankenship appeared nervous and that she had an empty gun holster in the room.

From a mirror, Officer Long and Officer Lachelle Waskom also observed another woman, Courtney Malone, asleep on a bed inside the room. Officer Long instructed Blankenship to wake Malone. Blankenship went over to Malone and attempted to wake her by speaking to her, but that was unsuccessful. Blankenship then started to shake Malone, but that too was unsuccessful. Blankenship then yelled at Malone, but, again, Malone did not stir. The officers "were afraid that there may be some type of medical problem." Id. at 62. Officer Waskom entered the room and approached Malone while Officer Long stayed in the hallway with Blankenship. Officer Waskom "shook [Malone] until she woke up" and then brought Malone out to the hallway. Id. The officers patted Malone down for their safety and did not find anything of note. Malone declined medical treatment.

The officers applied for a search warrant.[3] As Officer Long explained:

---

[3] Despite the guidance of Indiana Appellate Rule 50(B)(1), Blankenship has not included the search warrant in her Appendix on appeal.

[After other officers secured the scene] Officer Waskom and myself then proceeded to the Morgan County Courthouse to meet with Deputy Prosecutor Deiwert . . . .

Officer Waskom and myself met with Deputy Prosecutor Deiwert, and then made contact with Judge Williams in reference to the search warrant. Officer Waskom, Deputy Prosecutor Deiwert and myself then proceeded to Judge Williams' residence. At about 0030 hours on 12/02/11 Officer Waskom and myself gave oral testimony to Judge Williams, and a search warrant was issued for Room #328 at the Holiday Inn Express . . . as well as for the persons of Kimberly Blankenship and Courtney Malone.

Appellant's App. at 16. Upon executing the search warrant, the officers seized methamphetamine, marijuana, a digital scale, "[f]ive multi-colored plastic cups containing different colored residue," two hypodermic needles, and "a clear glass smoking device." Id.

On December 2, the State charged Blankenship with possession of methamphetamine, as a Class D felony; unlawful possession of a syringe, as a Class D felony; maintaining a common nuisance, a Class D felony; possession of marijuana, as a Class A misdemeanor; and possession of paraphernalia, as a Class A misdemeanor.[4] Blankenship filed a motion to suppress the evidence against her, arguing that Dasko's "free air sniff" from the hotel's hallway violated Blankenship's rights under Article 1, Section 11 of the Indiana Constitution. The trial court denied Blankenship's motion to suppress after a hearing. The court then tried Blankenship in absentia and overruled Blankenship's counsel's objection to the State's evidence, which was based on the same grounds as her motion to suppress. The court found Blankenship guilty of unlawful possession of a syringe, as a Class D felony; maintaining a common nuisance, a Class D

---

[4] The charging information does not specify the level of the offenses alleged.

felony; and possession of paraphernalia, as a Class D felony. The court merged its judgment on possession of paraphernalia with its judgment on maintaining a common nuisance and sentenced Blankenship to an aggregate term of four years. This appeal ensued.

## DISCUSSION AND DECISION

On appeal, Blankenship argues that the trial court abused its discretion when it admitted into evidence the items seized from her hotel room. Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion. Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. Id.

In particular, Blankenship asserts that Dasko's sniff-search of the hotel's hallways violated Blankenship's rights under Article 1, Section 11 of the Indiana Constitution.[5] As our Supreme Court has stated:

> The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. . . .
>
> * * *
>
> [A]lthough . . . there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

---

[5] Blankenship does not suggest that her rights under the federal constitution were violated.

Litchfield v. State, 824 N.E.2d 356, 359, 361 (Ind. 2005).

We review the determination of reasonable suspicion and probable cause de novo. Myers v. State, 839 N.E.2d 1146, 1150 (Ind. 2005). Moreover, under the exclusionary rule, evidence obtained pursuant to an illegal search is inadmissible at trial. Newby v. State, 701 N.E.2d 593, 602 (Ind. Ct. App. 1998). "[T]he exclusionary rule is designed to deter police misconduct," Spillers v. State, 847 N.E.2d 949, 957 (Ind. 2006) (quotations omitted), and "[t]o encourage compliance" with constitutional standards for searches and seizures, Shotts v. State, 925 N.E.2d 719, 723 (Ind. 2010).

However, the police in the instant case did not engage in a warrantless search of Blankenship's hotel room but, rather, acted pursuant to a search warrant. Thus, even if Blankenship were correct in her theory that Dasko's sniff-search of the hotel hallway violated her rights under Article 1, Section 11, we will affirm the trial court's admission of the evidence if the officers acted in good faith when they executed the search warrant for her hotel room. As our Supreme Court has explained:

> Even if the [the search] warrant was defective, suppression of the [seized evidence] . . . is not an automatic consequence. Suppression of evidence under controlling Fourth Amendment precedent turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct. Specifically, invalidity of a warrant does not necessarily require exclusion of evidence seized under its authority. Even if a warrant is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant. Evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment. Put differently, the high cost associated with suppression is appropriate only where police acts are sufficiently culpable and suppression can meaningfully deter those acts. The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer

6

would have known that the search was illegal in light of all of the circumstances.

Id. at 724 (citations, quotations, and internal alterations omitted). Our Supreme Court has recognized that "the federal good-faith exception . . . has been held applicable to the prohibition of unreasonable search and seizure found in art. 1, § 11 of the Indiana Constitution." Hopkins v. State, 582 N.E.2d 345, 351 (Ind. 1991).

The good faith exception is also codified[6] in Indiana as follows:

(a) In a prosecution for a crime or a proceeding to enforce an ordinance or a statute defining an infraction, the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.

(b) For purposes of this section, evidence is obtained by a law enforcement officer in good faith if:

(1) it is obtained pursuant to:

(A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid; or
(B) a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated; and

(2) the law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under I.C. 5-2-1-9 . . . .

Ind. Code § 35-37-4-5. Thus:

---

[6] Indiana courts utilize this statutory template when the good faith exception is an issue but, at the end of the day, whether there has been an Article 1, Section 11 violation remains a judicial determination grounded in the Indiana Constitution itself.

7

whether or not [an officer] acted in good faith in executing the warrant depends upon (1) whether a neutral and detached magistrate made the determination of probable cause and issued the warrant; (2) whether the warrant was free of obvious defects other than non-deliberate errors; and (3) whether [the officer] reasonably believed the warrant was still valid when he executed it.

Caudle v. State, 749 N.E.2d 616, 621-22 (Ind. Ct. App. 2001) (footnotes and citation omitted), aff'd on reh'g, 754 N.E.2d 33, trans. denied.

Here, again, Blankenship argues that Dasko's sniff-search of the hotel hallway violated her rights under Article 1, Section 11 because (1) the search was done randomly and without particularized suspicion; (2) the degree of intrusion at the threshold of her hotel room, while "slight, . . . is outweighed by the arbitrariness of the search," Appellant's Br. at 9; and (3) "there was no articulation at the trial court level for why police need to conduct random free-air sniffs of hotel rooms any more than they would need to do so for homes," id. at 10. As support for her argument that Dasko's search violated her rights under the Indiana Constitution, Blankenship substantially relies on this court's opinion in Hoop v. State, 909 N.E.2d 463 (Ind. Ct. App. 2009), trans. denied. In Hoop, we stated that, under Article 1, Section 11, police must have reasonable suspicion of illegal activity before the police may conduct a canine sniff-search at the front door of a defendant's private residence. Id. at 470.

But we then held that, on the facts of that case, the officers had acted in good faith reliance on a search warrant and, as such, application of the exclusionary rule was not appropriate. Id. at 471. Specifically, we stated as follows:

There has been no allegation that the warrant was based on false information, the warrant was facially deficient, or the magistrate was not

8

detached and neutral. Nor do we think the affidavit was "so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable." The dog sniff alone would provide probable cause for a warrant, and the officers had no reason to think the sniff was unlawful. The sniff was permissible under the great weight of authority under the Fourth Amendment. No case has squarely addressed the issue under Art. 1, § 11. Although we find support for a reasonable suspicion requirement in Litchfield, neither Litchfield nor previous opinions assessing the reasonableness of dog sniffs under Art. 1, § 11 clearly foreshadow the result in this case. Therefore, we conclude the officers reasonably relied on the magistrate's conclusion that the dog sniff was in accordance with the law. See State v. Spillers, 847 N.E.2d 949, 958 (Ind. 2006) (after careful examination of existing case law, Court determined informant's statements were not against penal interest, but that officers relied on warrant in good faith; officers need only a reasonable knowledge of the law and are not required to do extensive legal research before obtaining a warrant).

Id. (emphasis added; footnote and some citations omitted).

In light of our holding in Hoop that the officers acted in good faith, Blankenship

argues as follows:

> The only facts underlying the warrant were those obtained through the random free-air sniff. Therefore the warrant is tainted and invalid.
>    The good faith exception . . . does not make this search lawful. . . . The good faith exception does not apply if, inter alia, the affidavit or sworn testimony upon which probable cause rests is so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable. Here, Hoop v. State directly foreshadowed the finding that a random free-air sniff of a dwelling requires reasonable suspicion, and, therefore, the good faith exception does not apply.

Appellant's Br. at 10-11 (citations omitted). We cannot agree with Blankenship.

Assuming only for the sake of argument that the officers needed reasonable

suspicion to walk Dasko down a common hallway in a hotel, the officers here acted in

good faith when they relied on the search warrant to search Blankenship's hotel room.

As we stated in Hoop, the officers reasonably believed that Dasko's signal would provide

9

probable cause for a warrant. See 909 N.E.2d at 471. The warrant here was issued by a neutral and detached magistrate. See Caudle, 749 N.E.2d at 622. And there is no argument or suggestion that the warrant contained obvious defects or deliberate errors or that the warrant was no longer valid when it was executed. See id. Further, Hoop did not "directly foreshadow" the facts of this case, as Blankenship contends. See Appellant's Br. at 11. Hoop involved a sniff-search of the front door of a private residence, not the sniff-search of a common area hallway at a hotel where the officers had been explicitly invited to search by the hotel's management. Neither did Hoop involve the officers' direct observation of a woman in Malone's apparent condition.

In sum, we need not reach Blankenship's argument that Article 1, Section 11 prohibited the officers from walking canine units in the common area of the hotel, at the hotel management's request, absent reasonable suspicion. The officers searched Blankenship's hotel room while objectively and reasonably relying on a search warrant. There is no evidence that the officers had knowledge, or should be charged with knowledge, that the sniff-search in the hallway may have been unconstitutional. Accordingly, there is no "wrongful police conduct" to deter, and suppression of the evidence under the exclusionary rule would not be appropriate in light of the facts and circumstances of this case. See Shotts, 925 N.E.2d at 724. As such, we affirm the trial court's admission of the evidence.

Affirmed.

CRONE, J., concurs.

BAKER, J., concurs in result with separate opinion.

10

# IN THE
# COURT OF APPEALS OF INDIANA

KIMBERLY D. BLANKENSHIP,     )
                      )
     Appellant-Defendant,     )
                      )
         vs.           )     No. 55A05-1307-CR-342
                      )
STATE OF INDIANA,     )
                      )
                      )
     Appellee-Plaintiff.     )

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Christopher L. Burnham, Judge
Cause No. 55D02-1112-FD-1510

**BAKER, Judge, concurring in result.**

I agree that the trial court properly admitted the contraband seized from Blankenship's hotel room into evidence. However, I part ways with the majority's need to discuss the notion that the officers' search was justified because they "acted in good faith"[7] when executing the search warrant and searching Blankenship's hotel room. Slip op. at 6-10.

As the majority points out, Dasko sniff-searched a common area hallway at a hotel where the police officers had been explicitly invited to search by the hotel's manager. Id.

---

[7] As the majority observes, the good faith exception is codified in Indiana Code section 35-37-4-5.

at 10. In other words there was no arbitrary or random canine sniff at the hotel absent the business' consent. Indeed, the circumstances here differ markedly from those in Hoop v. State, 909 N.E.2d 463 (Ind. Ct. App. 2009), where there a canine sniff-search was conducted at the front door of a private residence. There was no direct observation by the police in Hoop of a woman in Malone's condition, and there was no sighting of a gun holster. That said, I believe that the evidence in this case establishes that Dasko's sniff-sweep of the common areas at the hotel, at the hotel manager's request, was reasonable, and the good faith reliance discussion set forth in Hoop does not control the outcome here.

I would also note that this court has previously approved dog sniffs of vehicles lawfully stopped for traffic violations without reasonable suspicion. State v. Gibson, 886 N.E.2d 639, 643 (Ind. Ct. App. 2008). Dog sniffs have also been approved for packages in the mail when the delivery of the item was not substantially delayed. Rios v. State, 762 N.E.2d 153, 160-61 (Ind. Ct. App. 2002).

In my view, when applying the provisions of Article 1, Section 11 of the Indiana Constitution, there was a strong suspicion in this case of criminal activity occurring in the hotel when the manager reported to the police that she found evidence that the patrons were using drugs in the rooms. The degree of intrusion, if any, was low, inasmuch as the dog sniff was conducted late in the evening when it was presumed that the patrons were sleeping. In fact, it was noted at the suppression hearing that "all of the other guests who were there that night didn't even know that it had happened. That's how little intrusion

12

there in fact was." Tr. p. 40. Blankenship even concedes that "the degree of intrusion was slight." Appellant's Br. p. 9.

Additionally, the extent of the police officers' need to function as community caretakers at the behest of concerned property owners was high. Preventing law enforcement personnel from coming to the aid of a property owner who fears that his or her property is being unwillingly turned into a drug haven would result in the type of unreasonableness that the Fourth Amendment attempts to avoid.

For these reasons, I do not believe that the canine "free air sniff" from the hotel's hallway violated Blankenship's rights under Article 1, Section 11 of the Indiana Constitution. Thus, the search warrant was validly issued, the police officers conducted a proper search of the hotel room, and the evidence was properly admitted at trial. As a result, I would affirm Blankenship's convictions.