UNITED STATES of America, Plaintiff,

v.

Larry M. MARLAR, Defendant.

No. 1:92CR6–S–D.

United States District Court,
N.D. Mississippi.

Aug. 9, 1993.

Alfred E. Moreton, III, U.S. Atty., Robert H. Norman, Asst. U.S. Atty., Oxford, MS, for plaintiff.

Ronald W. Lewis, Oxford, for defendant.

## *OPINION*

SENTER, Chief Judge.

On July 19, 1993, this court conducted a hearing on the defendant's motion to suppress evidence seized from his motel room and statements made by him incident to his arrest. Having heard the testimony and considered the argument of counsel and the applicable case law, the court is now prepared to issue its ruling.

### FACTS

Late on the evening of December 2, 1991, former Mississippi Bureau of Narcotics Agent James Taylor (presently the Sheriff of Alcorn County, Mississippi) received a telephone call at his home from an individual identifying herself as Lisa Lambert. Although Agent Taylor did not know Lambert personally or by reputation, he listened as she divulged certain information about the instant defendant, Larry M. Marlar. Specifically, Lambert told Agent Taylor that Marlar had recently returned from Mexico with a large amount of marijuana and cocaine and described his vehicle as a dark brown two-door Honda Accord bearing a Tennessee license tag. Lambert also informed Taylor that on November 31, 1991,[1] Marlar was a guest at the EconoLodge in Corinth, Mississippi, and that he was in possession of marijuana, cocaine, and a semi-automatic pistol.

Because of prior commitments the next day, Taylor did not immediately follow up on Lambert's tip. However, on December 4, Taylor travelled to the EconoLodge in Corinth to begin his investigation. There, he learned that Room 112 had been rented in the name of Horace Marlar, a relative of Larry Marlar, but that its occupant had checked out on December 3, paying cash for the room. Motel personnel informed Agent Taylor that the occupant of Room 112 had not permitted maid service or otherwise granted any motel personnel access to his room during his stay. They further advised Taylor that the occupant had apparently taken the television remote control and that they had tracked him down to the Crossroads Inn in Corinth.

Agent Taylor continued his investigation at the Crossroads Inn, where he observed an automobile matching the description provided by Lisa Lambert backed up to the door of Room 106, an exterior room separated from the public parking lot by only a sidewalk. A computer check of the car tag revealed that the brown Honda was registered to Larry M. Marlar of Knoxville, Tennessee. When Taylor questioned the desk clerk at this motel, he learned that Room 106 had been rented in the name of Horace Marlar and that the occupant was denying access to maid service.

Agent Taylor, who candidly admitted that Lisa Lambert's tip alone was insufficient to support a request for a search warrant (since he did not know Lambert), then called the Corinth Police Department and requested

---

1. The court assumes, although neither party enlightened the court on this point, that November 31 was in actuality December 1, since "[t]hirty days hath September, April, June, and November...."

assistance from the department's dog handler, Chip Timbes. Timbes and his German Shepherd, Hoss, had recently completed three and one-half months of drug detection training, where Hoss had established a 99 percent effectiveness rating, but this was to be Hoss's first "real search." It was Officer Timbes's opinion that a warrantless canine sniff of the motel room door would be permissible, although he acknowledged that he would have needed a warrant to conduct a sniff of a private residence. When Timbes arrived at the Crossroads Inn, he first had Hoss sniff the brown Honda parked in front of Room 106. In response, Hoss alerted, indicating that drug odors were emanating from the car. Timbes then walked Hoss past the doors of several motel rooms, and Hoss alerted to Room 106.

In Agent Taylor's opinion, these two alerts, when combined with Lambert's tip, the suspicious circumstances of Marlar's stay at the EconoLodge and the Crossroads Inn (including use of an alias, payment in cash, and denial of maid service), and the registration of the brown Honda in Marlar's name, provided probable cause for the issuance of a search warrant, which Taylor received from a Corinth municipal judge. When Taylor searched Room 106, he found a large quantity of marijuana, crack cocaine, and powder cocaine, a semi-automatic pistol, and various items of drug paraphernalia and papers. Defendant Marlar, who was present during the search, also allegedly made certain self-incriminating statements at that time and immediately thereafter during the booking process.

Marlar now seeks to suppress this evidence and the statements primarily on three grounds: (1) Taylor's characterization of Lisa Lambert in the "Underlying Facts and Circumstances" portion of his search warrant affidavit as a "good citizen informant" was a reckless misrepresentation; (2) the canine sniff outside Marlar's motel room was a prior illegal search; and (3) the information presented to the judge, apart from that obtained during the dog sniff, was stale. Each of these will be considered in turn.

## DISCUSSION

### I.

■ At the hearing held on this motion, Taylor candidly admitted that he knew nothing about Lisa Lambert. Nevertheless, he referred to her in the affidavit submitted to the municipal judge as a "good citizen informant." Taylor testified that he made this characterization based on his feeling that Lambert was a good citizen since he had no information to believe otherwise. Specifically, he stated that he based his assumption on the fact that he had no intelligence information that Lambert was involved in drugs or other criminal activity. Defendant Marlar maintains that by referring to Lambert as a "good citizen," Taylor "recklessly implied that his informant was of such good stature and reputation in the community that her information could be believed even though there was no suggestion that she had provided reliable information in the past."

The court finds this argument without merit. In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676.

In this court's opinion, Marlar has made no showing that Taylor's representation of Lambert as a "good citizen informant" was an untruth, much less a deliberate falsehood or

a reckless disregard for the truth. *See United States v. Mueller,* 902 F.2d 336, 341–42 (5th Cir.1990). At most, Taylor's characterization constituted negligence or innocent mistake, which is insufficient under *Franks* to prove deliberate falsity or reckless disregard for the truth. *See Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. Taylor's assumption that Lambert was a "good citizen" is certainly understandable given that she voluntarily identified herself and apparently did not wish to remain anonymous, which, of course, she could have done without negating the impact of her information. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (officer received anonymous letter which was used to establish probable cause after its details were corroborated by investigation; Court found that "practical commonsense judgment called for in making a probable cause determination" can be made on basis of corroboration of informant's statements by police investigation); *United States v. Privette,* 947 F.2d 1259, 1262 (5th Cir.1991) (uncertainty about veracity of informant can be compensated for by detail of statement or internal consistency of statement and surrounding facts), *cert. denied,* —— U.S. ——, 112 S.Ct. 1279, 117 L.Ed.2d 505 (1992). *See also United States v. Webb,* 950 F.2d 226, 229–30 (5th Cir.1991) (defendant contended that officer failed to inform magistrate that informant was known convicted felon with bad reputation for truthfulness; court held that because officer independently verified central facts provided by informant and drug-sniffing dog confirmed existence of contraband in clothes trunk loaded by defendant into his vehicle, there was sufficient basis, under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to conclude officers acted in good faith on warrant), *cert. denied,* —— U.S. ——, 112 S.Ct. 2316, 119 L.Ed.2d 236 (1992); *United States v. Brown,* 941 F.2d 1300, 1304 (5th Cir.) (warrant affidavit based on hearsay permissible where affidavit contained other information within personal knowledge of affiant that corroborated hearsay), *cert. denied,* —— U.S. ——, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991). Even if the reference to the "good citizen informant" were excised, which is all that would be required by *Franks,* the court is of

the opinion that more than sufficient probable cause to support the search warrant would nevertheless remain.

## II.

■ Marlar next argues that the dog sniff of his motel door was a search which required the issuance of a search warrant before it could be conducted. According to Marlar, because Taylor did not obtain a warrant beforehand, the dog sniff violated the Fourth Amendment and therefore was illegal. In response, the government contends that Marlar "had no reasonable expectation of privacy in the molecules of air wafting across the public sidewalks and parking lot of the Crossroads Inn.... and [Taylor's] use of a dog at the motel room door was a minimal intrusion, one that did not impinge upon any expectation of privacy that society is willing to accept as reasonable."

Marlar has uncovered only one case which allegedly supports his position. In *United States v. Thomas,* 757 F.2d 1359 (2d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985) the court of appeals held:

> Because of defendant['s] ... heightened expectation of privacy inside his [apartment] dwelling, the canine sniff at his door constituted a search. As the agent had no warrant, the search violated the Fourth Amendment. Hence ... the information gathered from the dog's alert may not properly be used to support the issuance of the search warrant of [defendant's] apartment.

*Thomas,* 757 F.2d at 1367. As both parties point out, *Thomas* has been criticized by other circuits and in other contexts, *e.g., United States v. Lingenfelter,* 997 F.2d 632 (9th Cir.1993) (dog sniff of exterior of commercial warehouse without warrant permissible because no "search" involved); *United States v. Colyer,* 878 F.2d 469 (D.C.Cir.1989) (dog sniff of Amtrak sleeper car permissible because no "search" involved), and, in fact, *Thomas* appears to stand alone for the proposition that a dog sniff can ever constitute a search. The Fifth Circuit has yet to consider the issue in the context presented here, although the court has, in no uncertain terms, stated: "A dog 'sniff' is not a search." *Unit-*

*ed States v. Seals,* 987 F.2d 1102, 1106 (5th Cir.1993).

█ It has long been recognized that "[i]n assessing the reasonableness of [a defendant's] privacy expectations ... the concept of the sanctity and inviolability of the home stands at the very core of the protections afforded by the Fourth Amendment." *United States v. Jackson,* 588 F.2d 1046, 1052 (5th Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). And a "'hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office.'" *Jackson,* 588 F.2d at 1052 (citation omitted). *See also United States v. Richard,* 994 F.2d 244, 247 (5th Cir.1993) (Fourth Amendment protection from unreasonable searches and seizures is extended to guests staying in hotel rooms). Therefore, under these authorities, the court finds that Marlar possessed a reasonable expectation of privacy in his motel room at the Crossroads Inn. The question then becomes whether the dog sniff outside Marlar's door, which opened to the exterior of the building, infringed on that expectation. If so, the sniff constituted a search within the meaning of the Fourth Amendment, thereby necessitating the prior procurement of a search warrant. If not, the canine sniff was not a Fourth Amendment search, and the officers did not need prior judicial authorization before proceeding with the sniff.

█ Having carefully considered the matter, the court is of the opinion that the canine sniff at issue here, i.e., the sniff of an exterior motel room door opening onto a public sidewalk and parking lot, did not intrude on Marlar's reasonable expectation of privacy and therefore did not constitute a search within the meaning of the Fourth Amendment. There is no doubt that when a officer uses his own senses to eavesdrop on a conversation in an adjoining hotel room or to smell burning marijuana emanating from a closed motel room door or to look through an open motel window, no search has occurred. *See, e.g., Jackson,* 588 F.2d at 1049 (officers, suspecting defendant was drug trafficker, occupied hotel room which adjoined defendant's, and "by lying on the room floor and pressing their ears to the ¾" crack at the bottom of their connecting door," could hear conversations in defendant's room; court found this was not Fourth Amendment search requiring prior warrant). This result is based in part, as the *Jackson* court recognized, on the "open, public, and shared atmosphere of a motel [and] the nearness of one's neighbors...." *Id.* at 1052. *See also Horton v. Goose Creek Independent School District,* 690 F.2d 470, 477 (5th Cir.1982) ("The courts have reasoned that if a police officer, positioned in a place where he has a right to be, is conscious of an odor, say, of marijuana, no search has occurred; the aroma emanating from the property or person is considered exposed to the public 'view' and, therefore, unprotected"), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). In this court's view, a trained narcotics dog acts as little more than an extension of the officer's own senses in much the "same way that a flashlight enhances the officer's sight." *Horton,* 690 F.2d at 477. *See also United States v. Thomas,* 787 F.Supp. 663, 684 (E.D.Tex.1992) (dog merely amplifies human olfactory capacity which is not search), *aff'd,* 983 F.2d 1062 (1993). As recognized by the United States Supreme Court, a "canine sniff is *sui generis.*" *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983). It is quick, discriminate, and "much less intrusive than a typical search." *Place,* 462 U.S. at 707, 103 S.Ct. at 2644. *See also id.* ("We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure").

In this case, there was no intrusion into the interior of Marlar's motel room. Rather, the officer and the dog were in a public area where they lawfully had the right to be, and the dog alerted on the drug scent which was emanating into that area, in the same way that the scent travels from a closed suitcase or an automobile. Therefore, the court finds that the canine sniff of the exterior of Marlar's motel room door did not infringe on his reasonable expectation of privacy and was not a search.

█ Alternatively, the court is of the opinion that, even without the alert of the

dog at the motel room door, there was sufficient probable cause for issuance of the warrant. Marlar has not attacked the validity of the canine sniff of the exterior of the brown Honda Accord, which was registered to Larry Marlar and matched the description provided by Lisa Lambert and was parked in front of Room 106. Nor would such an attack have been meritorious. *See Jennings v. Joshua Independent School District,* 877 F.2d 313, 316 (5th Cir.1989) (use of trained dogs to sniff cars parked on public parking lots does not constitute Fourth Amendment search), *cert. denied,* 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990); *see also Seals,* 987 F.2d at 1106 (dog sniff of car stopped for investigatory reasons not search); *United States v. Dovali–Avila,* 895 F.2d 206 (5th Cir.1990) (mere walking of drug dog around vehicle at border checkpoint not search). The alert on the Honda, when coupled with Taylor's *Draper* verification of the details of Lambert's tip, *see Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), was, in this court's opinion, sufficient probable cause for the issuance of the search warrant by the municipal judge. *See United States v. Pace,* 955 F.2d 270 (5th Cir.1992) (affidavit must connect residence to be searched with illegal activity but nexus may be established through normal inferences as to where articles sought would be located). Assuming arguendo that this information was insufficient to establish probable cause, the court nevertheless believes that the search was valid under the good-faith exception of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), since the affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420.

### III.

Marlar's final point of attack involves whether the information presented to the judge, aside from that obtained during the dog sniff, was stale. "Staleness is to be determined on the facts of each case. No mechanical counting of the time between the events alleged in the affidavit and the time the warrant is issued will be made." *United States v. Webster,* 734 F.2d 1048, 1056 (5th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). "As in other issues regarding the existence or absence of probable cause, common sense and reasonableness must prevail, and a magistrate's judgment based upon the facts before him must be given considerable deference in the absence of arbitrariness." *United States v. Freeman,* 685 F.2d 942, 951 (5th Cir.1982).

In light of these authorities, the court finds that the facts underlying the search warrant were not stale. Through investigation done on December 4, Taylor was able to verify all of the information that Lisa Lambert had provided him only days earlier and then, based on that information, to track Marlar to a nearby location. There, he found the Honda, which he learned was registered to Larry Marlar, and discovered that the occupant of Room 106 at the Crossroads Inn had registered under the name of Horace Marlar and was not allowing any access to his room by motel personnel, just as he had done at the EconoLodge. These corroborative actions, together with the permissible sniff of the automobile, negate any staleness argument.

An appropriate order shall issue.

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Pursuant to an opinion filed contemporaneously herewith, IT IS ORDERED:

That defendant's motion to suppress is denied.

SO ORDERED.