POLSTON, J.,
dissenting.
Because the majority’s decision violates binding United States Supreme Court precedent, I respectfully dissent.
Despite the majority’s focus upon multiple officers and the supposed time involved in surveillance and in execution of the search warrant,[12] it is undisputed that one dog and two officers were lawfully and briefly present near the front door of Jar-dines’ residence when the dog sniff at issue in this case took place. And despite statements about privacy interests in items and odors within and escaping from a home,[13] the United States Supreme Court has ruled that there are no legitimate privacy interests in contraband under the Fourth Amendment. See Illinois v. Caballes, 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (“Official conduct that does not ‘compromise any legitimate interest in privacy’ is not a search subject to the Fourth Amendment. We have held that any interest in possessing contraband cannot be deemed ‘legitimate.’ ”) (quoting United States v. Jacobsen, 466 U.S. 109, 123, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).
Contrary to the majority’s position, the United States Supreme Court has ruled that a dog sniff is not a search within the meaning of the Fourth Amendment because a dog sniff only reveals contraband in which there is no legitimate privacy *62 interest. See id. (holding that dog sniff of vehicle was not a search within meaning of Fourth Amendment and explaining that “governmental conduct that only reveals the possession of contraband ‘compromises no legitimate privacy interest.’ ”) (quoting Jacobsen, 466 U.S. at 123, 104 S.Ct. 1652); City of Indianapolis v. Edmond, 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (“Just as in United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics.”); Jacobsen, 466 U.S. at 124 n. 24, 104 S.Ct. 1652 (“[T]he reason [the dog sniff'in Place] did not intrude upon any legitimate privacy interest was that the governmental conduct could reveal nothing about noncontraband items.”); Place, 462 U.S. at 707, 103 S.Ct. 2637 (“[T]he sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited.”). Accordingly, the dog sniff involved in this case, which occurred while law enforcement was lawfully present at the front door, cannot be considered a search in violation of the Fourth Amendment.
I. BACKGROUND
On November 3, 2006, law enforcement received an anonymous tip identifying Jardines’ home as a place used to grow marijuana. On December 5, 2006, law enforcement set up surveillance of Jardines’ residence. After Detective Pedraja of the Miami-Dade Police Department had conducted surveillance for fifteen minutes, Detective Bartlet of the Miami-Dade Police Department arrived with a drug-detection dog, Franky. Detective Bartlet and Franky, who was on a six-foot leash, approached the front porch of the residence with Detective Pedraja behind them. Franky began tracking an odor and traced it to the front door, where Franky assumed a sitting position after sniffing at the base of the door, thereby alerting to the scent of marijuana. Detective Bartlet and Franky immediately returned to Detective Bartlet’s vehicle. Thereafter, Detective Pedraja smelled the scent of live marijuana at the front door. Detective Pedraja then knocked on the front door, received no response, and noticed that Jardines’ air conditioner was running excessively.[14]
Based upon this information, a search warrant was obtained, and Jardines’ residence was searched. The search resulted in the seizure of live marijuana plants and equipment used to grow those plants. Jardines was charged with trafficking in cannabis and grand theft.
Jardines moved to suppress the seized evidence, arguing that Franky’s sniff was an unconstitutional search and that Officer Pedraja’s smell of marijuana was tainted by Franky’s prior sniff. The trial court granted Jardines’ motion. On appeal, *63 however, the Third District reversed, reasoning as follows:
[F]irst, a canine sniff is not a Fourth Amendment search; second, the officer and the dog were lawfully present at the defendant’s front door; and third, the evidence seized would inevitably have been discovered.
State v. Jardines, 9 So.3d 1, 4 (Fla. 3d DCA 2008). In holding that a dog sniff does not constitute a search under the Fourth Amendment, the Third District certified conflict with the Fourth District’s decision in State v. Rabb, 920 So.2d 1175 (Fla. 4th DCA 2006).
II. ANALYSIS
The Fourth Amendment to the United States Constitution provides that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” The similar right contained in the Florida Constitution is “construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.” Art. I, § 12, Fla. Const. Therefore, this Court’s jurisprudence in this area must conform to the United States Supreme Court’s precedent interpreting the Fourth Amendment.
In this case, it is undisputed that law enforcement was lawfully present at Jar-dines’ front door. While the Fourth Amendment certainly protects “the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion,” Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961), the publicly accessible area around the front door of the home is not accorded the same degree of Fourth Amendment protection. See, e.g., United States v. French, 291 F.3d 945, 953 (7th Cir.2002) (“The route which any visitor or delivery man would use is not private in the Fourth Amendment sense....”) (quoting United States v. Evans, 27 F.3d 1219, 1229 (7th Cir.1994)); United States v. Hersh, 464 F.2d 228, 230 (9th Cir.1972) (“Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person’s right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man’s ‘castle’ with the honest intent of asking questions of the occupant thereof — whether the questioner be a pollster, a salesman, or an officer of the law.”) (quoting Davis v. United States, 327 F.2d 301, 303 (9th Cir.1964)). In fact, the majority acknowledges that “one does not harbor an expectation of privacy on a front porch where salesmen or visitors may appear at any time.” Majority op. at 46 (quoting State v. Morsman, 394 So.2d 408, 409 (Fla.1981)).
Furthermore, there are no allegations here that an officer’s detection of the scent of marijuana while lawfully present at Jar-dines’ front door would have violated the Fourth Amendment. There are no such allegations because “the police may see what may be seen ‘from a public vantage point where [they have] a right to be.’ ” Florida v. Riley, 488 U.S. 445, 449, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989) (quoting California v. Ciraolo, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)) (reversing a decision of this Court that had factually distinguished a United States Supreme Court decision to hold that a helicopter’s flight at 400 feet over property near a home violated the Fourth Amendment); see also United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (search warrant properly based in part upon investigators’ smell of odor when they walked in front of home). Or, as the Ninth Circuit plainly put it with *64 regard to the sense of smell, one does not have “a reasonable expectation of privacy from drug agents with inquisitive nostrils.” United States v. Johnston, 497 F.2d 397, 398 (9th Cir.1974); see also 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.3(c), at 575-77 (4th ed. 2004) (“[I]f police utilize ‘normal means of access to and egress from the house’ for some legitimate purpose, such as to make inquiries of the occupant, to serve a subpoena, or to introduce an undercover agent into the activities occurring there, it is not a Fourth Amendment search for the police to see or hear or smell from that vantage point what is happening inside the dwelling”) (footnotes omitted) (quoting Lorenzana v. Superior Court, 9 Cal.3d 626, 108 Cal.Rptr. 585, 511 P.2d 33, 37 (1973)); United States v. Angelos, 433 F.3d 738, 747 (10th Cir.2006) (applying the “plain smell” doctrine).
Accordingly, the only remaining question at issue in this case is whether a law enforcement officer, who is lawfully present at the front door of a private residence, may employ a dog sniff at that front door. Based upon binding United States Supreme Court precedent, the answer is quite clearly yes.
The United States Supreme Court has explained that “a Fourth Amendment search does not occur — even when the explicitly protected location of a house is concerned — unless ‘the individual manifested a subjective expectation of privacy in the object of the challenged search,’ and ‘society [is] willing to recognize that expectation as reasonable.’ ” Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (quoting Ciraolo, 476 U.S. at 211, 106 S.Ct. 1809) (alteration in original).
Additionally, and of great importance here, the United States Supreme Court has held that a dog sniff does not constitute a search within the meaning of the Fourth Amendment because it only reveals contraband and there is no legitimate privacy interest in contraband that society is willing to recognize as reasonable. See Caballes, 543 U.S. 405, 125 S.Ct. 834; Edmond, 531 U.S. 32, 121 S.Ct. 447; Place, 462 U.S. 696, 103 S.Ct. 2637; see also Jacobsen, 466 U.S. 109, 104 S.Ct. 1652.
First, in Place, 462 U.S. at 707, 103 S.Ct. 2637, the United States Supreme Court stated the following regarding the unique and very limited nature of a dog sniff when holding that a dog sniff of a passenger’s luggage in an airport was not a search under the Fourth Amendment:
We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. Id., at 13 [97 S.Ct. 2476]. A “canine sniff’ by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer’s rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.
In these respects, the canine sniff is sui generis. We are aware of no other investigative procedure that is so limited *65 both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here— exposure of respondent’s luggage, which was located in a public place, to a trained canine — did not constitute a “search” within the meaning of the Fourth Amendment.
Then, the United States Supreme Court further explained its decision in Place when holding in Jacobsen, 466 U.S. at 123, 104 S.Ct. 1652, that a chemical test of a package did not constitute a search because “governmental conduct that can reveal whether a substance is cocaine, and no other arguably ‘private’ fact, compromises no legitimate privacy interest.” The Court stated that this holding was “dictated” by Place because, “as in Place, the likelihood that official conduct of the kind disclosed by the record will actually compromise any legitimate interest in privacy seems much too remote to characterize the testing as a search subject to the Fourth Amendment.” Jacobsen, 466 U.S. at 124, 104 S.Ct. 1652. The Court explained that “the reason [the dog sniff in Placel did not intrude upon any legitimate privacy interest was that the governmental conduct could reveal nothing about noncontraband items.” Id. at 124 n. 24, 103 S.Ct. 2637.
Thereafter, in Edmond, 531 U.S. at 40, 121 S.Ct. 447, the United States Supreme Court reaffirmed Place when briefly discussing why a dog sniff of the exterior of a car stopped at a checkpoint did not constitute a search:
It is well established that a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment. See, e.g., Sitz, [496 U.S.] at 450 [110 S.Ct. 2481], The fact that officers walk a narcotics-detection dog around the exterior of each car at the Indianapolis checkpoints does not transform the seizure into a search. See United States v. Place, 462 U.S. 696, 707 [103 S.Ct. 2637, 77 L.Ed.2d 110] (1983). Just as in Place, an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics. See ibid. Like the dog sniff in Place, a sniff by a dog that simply walks around a car is “much less intrusive than a typical search.” Ibid. Cf. United States v. Turpin, 920 F.2d 1377, 1385 (C.A.8 1990).
Finally, in Caballes, 543 U.S. at 408-09, 125 S.Ct. 834, the United States Supreme Court again reaffirmed Place as well as Jacobsen when holding that a dog sniff of the exterior of a vehicle during a lawful traffic stop was not a search because the sniff only revealed contraband in which there is no legitimate privacy interest:
[Conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent’s constitutionally protected interest in privacy. Our cases hold that it did not.
Official conduct that does not “compromise any legitimate interest in privacy” is not a search subject to the Fourth Amendment. Jacobsen, 466 U.S., at 123 [104 S.Ct. 1652]. We have held that any interest in possessing contraband cannot be deemed “legitimate,” and thus, governmental conduct that only reveals the possession of contraband “compromises no legitimate privacy interest.” Ibid. This is because the expectation “that certain facts will not come to the attention of the authorities” is not the same as an interest in “privacy that society is prepared to consider reasonable.” Id., *66 at 122 [104 S.Ct. 1652] (punctuation omitted). In United States v. Place, 462 U.S. 696 [108 S.Ct. 2637, 77 L.Ed.2d 110] (1983), we treated a canine sniff by a well-trained narcotics-detection dog as “sui generis ” because it “discloses only the presence or absence of narcotics, a contraband item.” Id., at 707 [103 S.Ct. 2637] see also Indianapolis v. Edmond, 531 U.S. 32, 40 [121 S.Ct. 447, 148 L.Ed.2d 333] (2000)....
Accordingly, the use of a well-trained narcotics-detection dog — one that “does not expose noncontraband items that otherwise would remain hidden from public view,” Place, 462 U.S., at 707 [103 S.Ct. 2637] — during a lawful traffic stop, generally does not implicate legitimate privacy interests. In this case, the dog sniff was performed on the exterior of respondent’s car while he was lawfully seized for a traffic violation. Any intrusion on respondent’s privacy expectations does not rise to the level of a constitutionally cognizable infringement.
In Caballes, the Court also explained why its dog sniff decisions are consistent with its thermal-imaging decision, namely because — unlike a thermal imaging device — a dog sniff only reveals contraband:
This conclusion is entirely consistent with our recent decision that the use of a thermal-imaging device to detect the growth of marijuana in a home constituted an unlawful search. Kyllo v. United States, 533 U.S. 27 [121 S.Ct. 2038, 150 L.Ed.2d 94] (2001). Critical to that decision was the fact that the device was capable of detecting lawful activity — in that case, intimate details in a home, such as “at what hour each night the lady of the house takes her daily sauna and bath.” Id., at 38 [121 S.Ct. 2038]. The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent’s hopes or expectations concerning the nondetection of contraband in the trunk of his car. A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.
To summarize, in Place, Jacobsen, Edmond, and Caballes, the United States Supreme Court held that dog sniffs are not searches within the meaning of the Fourth Amendment because they only detect contraband and there is no legitimate privacy interest in contraband that society recognizes as reasonable. A vast majority of federal[15] and state[16] courts have inter *68 preted the United States Supreme Court’s decisions as holding that dog sniffs are not searches under the Fourth Amendment, even in the context of private residences.[17]
In this case, Franky the dog was lawfully present at Jardines’ front door when he alerted to the presence of marijuana. And because, under the binding United States Supreme Court precedent described above, a dog sniff only reveals contraband in which there is no legitimate privacy interest, Franky’s sniff cannot be considered a search violating the Fourth Amendment.
The majority concludes that the United States Supreme Court’s precedent regarding dog sniffs does not apply here because those dog sniff cases did not involve dog sniffs of a home. See majority op. at 44. However, the United States Supreme Court did not limit its reasoning regarding dogs sniffs to locations or objects unrelated to the home. There is no language in Place, Jacobsen, Edmond, or Caballes that indicates the reasoning that dog sniffs are not searches (because they only reveal contraband in which there is no legitimate expectation of privacy) would change if the cases involved private residences. And, most importantly, the United States Supreme Court issued Caballes after its rul *69 ing in Kyllo, a case involving a home. Caballes specifically distinguishes Kyllo, not based upon the object sniffed, but by explaining that, unlike the thermal imaging device involved in Kyllo, a dog sniff only reveals contraband. See Caballes, 543 U.S. at 409-10, 125 S.Ct. 834. Therefore, the very limited and unique type of intrusion involved in a dog sniff is the dispositive distinction under United States Supreme Court precedent, not whether the object sniffed is luggage, an automobile, or a home. Accordingly, the.majority’s holding based upon the object sniffed is contrary to the United States Supreme Court’s precedent.[18] Kyllo is the precedent that is inapplicable to this dog sniff case, not the United States Supreme Court’s cases that actually involve dog sniffs.
In addition, the majority distinguishes the binding precedent regarding dog sniffs based upon what it terms “public opprobrium, humiliation and embarrassment.” Majority op. at 36, 45, 48, 49-50. By focusing upon the multiple officers and the supposed time involved in surveillance and the execution of the search warrant, the majority concludes that the sniff here was more intensive and involved a higher level of embarrassment than the sniffs involved in Place, Edmond, and Caballes. See majority op. at 46-47, 48-49. However, Place, Edmond, and Caballes all involved law enforcement activity by multiple officers. See Place, 462 U.S. at 698-99, 103 S.Ct. 2637 (describing law enforcement activity by multiple officers in Miami and two DEA agents in New York); Edmond, 531 U.S. at 34-36, 121 S.Ct. 447 (describing law enforcement activity by approximately thirty officers of the Indianapolis Police Department); Caballes, 543 U.S. at 406, 125 S.Ct. 834 (describing law enforcement activity by two officers). And although the majority states that the law enforcement activity in this case “lasted for hours,” majority op. at 36, 48, there is no evidence in the record to support that supposition. To the contrary, when asked during the suppression hearing how long he and the dog “remain[ed] on the scene that day,” Detective Bartlet responded, “That was a day we were doing multiple operations and I had probably two other people waiting for the dog. So I couldn’t have been there much more than five or ten minutes, just enough to grab the information on the flash drive, hand it over and leave.” The other specific testimony regarding time in the record is Detective Pedraja’s testimony during the suppression hearing explaining that he conducted surveillance for fifteen minutes before approaching the residence with Detective Bartlet and the dog and that it was “approximately 15 to 20 minutes from the time that [he] went to the front door, was standing at the threshold, went to the front door and then came back.” Furthermore, as explained above, there are no allegations here that the multiple officers near Jardines’ residence violated the Fourth Amendment, regardless of the level of “public opprobrium, humiliation, and embarrassment” that the presence of these officers may have caused Jardines. Therefore, distinguishing this case from the United States Supreme Court’s dog sniff cases based upon the level of embar- *70 rassraent the majority presumes to be present here is improper.
Finally, it is critical to note that the majority’s (and the special concurrence’s) assumption that Jardines had a reasonable expectation that the smell of marijuana coming from his residence would remain private is contrary to the explicit pronouncements in Jacobsen and Caballes that the possessor of contraband has no legitimate expectation of privacy in that contraband. See United States v. Colyer, 878 F.2d 469, 475 (D.C.Cir.1989) (“[T]he Supreme Court’s analyses in Place and Jacobsen indicate that a possessor of contraband can maintain no legitimate expectation that its presence will not be revealed.”). Indeed, the fact that one has no reasonable expectation of privacy in contraband is precisely why a dog sniff is not a search under the United States Supreme Court’s precedent interpreting the Fourth Amendment. Because the dog sniff is only capable of detecting contraband, it is only capable of detecting that which is not protected by the Fourth Amendment. See Caballes, 543 U.S. at 408, 125 S.Ct. 834 (“We have held that any interest in possessing contraband cannot be deemed ‘legitimate,’ and thus, governmental conduct that only reveals the possession of contraband ‘compromises no legitimate privacy interest.’ ”) (quoting Jacobsen, 466 U.S. at 123, 104 S.Ct. 1652).
III. CONCLUSION
As held by United States Supreme Court, a dog sniff is not a search within the meaning of the Fourth Amendment because it only reveals contraband and there is no legitimate expectation of privacy in contraband that society is willing to recognize as reasonable. Given this binding precedent, Franky’s sniff, while lawfully present at Jardines’ front door, cannot be considered a search under the Fourth Amendment. Therefore, I would approve the Third District’s decision in Jardines and disapprove the Fourth District’s contrary decision in Rabb.
Accordingly, I respectfully dissent.
CANADY, C.J., concurs.

. See majority op. at 35-36, 46, 47-49.

. See special concurrence at 57.

. According to testimony presented at the suppression hearing, Detective Pedraja remained behind Franky and Detective Bartlet while the dog sniff occurred. And based upon the facts described in the State’s response to Jardines’ motion to suppress, Sergeant Ramirez and Detective Donnelly established perimeter positions during the dog sniff with agents of the Drug Enforcement Administration (DEA) as a support unit. The State's response also explains that DEA continued surveillance after the sniff while Detective Pe-draja obtained a search warrant. Detective Pedraja testified at the suppression hearing that he got in his vehicle and "drove to a location close by" to prepare the warrant. Furthermore, Jardines' motion to suppress states that DEA agents and members of the Miami-Dade Police Department executed the search warrant "[ajbout an hour later.”

. See United States v. Scott, 610 F.3d 1009, 1016 (8th Cir.2010) (holding that dog sniff of apartment’s front door from common hallway was not a search under the Fourth Amendment and rejecting argument that Kyllo should be extended to dog sniffs, explaining that "the Supreme Court rejected such an interpretation of Kyllo in Caballes ”); United States v. Brock, 417 F.3d 692, 696 (7th Cir. 2005) (”[W]e hold that the dog sniff inside Brock’s residence [specifically at the locked door of bedroom rented by Brock] was not a Fourth Amendment search because it detected only the presence of contraband and did not provide any information about lawful activity over which Brock had a legitimate expectation of privacy.”); United States v. Reed, 141 F.3d 644, 649-50 (6th Cir. 1998) (holding that dog sniff of flat was not a search when dog was lawfully present in the flat and rejecting argument that Place only applies to "public sniffs”); United States v. Broadway, 580 F.Supp.2d 1179, 1193 (D.Colo.2008) (rejecting the applicability of Kyllo, holding a dog sniff of apartment from hallway and from walkway outside window was not a search under the Fourth Amendment, and explaining that "as long as a canine unit is lawfully present when a drug sniff occurs, the sniff is not a search”); United States v. Cota-Lopez, 358 F.Supp.2d 579, 592 (W.D.Tex.2002) (rejecting argument that the heightened privacy interest makes dog sniff of front door at pri *67 vate residence intrusive, explaining “Place and Jacobsen compel the conclusion that a canine sniff capable of detecting only the presence or absence of contraband is not a search within the meaning of the Fourth Amendment”), aff'd, 104 Fed.Appx. 931 (5th Cir.2004); United States v. Meindl, 83 F.Supp.2d 1207, 1216-17 (D.Kan.1999) (rejecting argument that plain view/smell exception was inapplicable because the dog sniff occurred in a home rather than a public place); United States v. Tarazon-Silva, 960 F.Supp. 1152, 1162-63 (W.D.Tex.1997) (holding dog sniff of the outside of a residence and alert at a dryer vent was not a search when dog and officer had the right to be positioned alongside residence), aff'd, 166 F.3d 341 (5th Cir.1998); see also United States v. Roby, 122 F.3d 1120, 1124-25 (8th Cir.1997) (holding that a dog sniff in hallway outside hotel room was not a search); United States v. Lingenfelter, 997 F.2d 632, 638 (9th Cir.1993) (holding that dog sniff of warehouse was not a search because defendant "could have no legitimate expectation that a narcotics canine would not detect the odor of the marijuana stored in the warehouse”); United States v. Seals, 987 F.2d 1102, 1106 (5th Cir.1993) ("A dog 'sniff' is not a search.”); United States v. Vasquez, 909 F.2d 235, 238 (7th Cir.1990) (concluding that sniff of garage from public alley was not a search); United States v. Colyer, 878 F.2d 469, 477 (D.C.Cir.1989) (holding that dog sniff of train sleeper compartment was not a search); United States v. Burns, 624 F.2d 95, 101 (10th Cir.1980) (stating that “olfactory activities of a trained police dog legitimately on the premises do not constitute a search” and holding that dog sniff of briefcase in motel room did not violate constitution); United States v. Marlar, 828 F.Supp. 415, 419 (N.D.Miss.1993) (holding that dog sniff of motel room door was not a search); but see United States v. Thomas, 757 F.2d 1359, 1367 (2d Cir.1985) (holding that dog sniff at front door of apartment was a search under the Fourth Amendment requiring warrant based on probable cause); but cf. United States v. Whitehead, 849 F.2d 849, 853 (4th Cir.1988) (”[T]he brief exposure of the interior of a train compartment to narcotics detection dogs is constitutionally permissible when based on a reasonable, articulable suspicion that luggage within the compartment contains contraband.”).
Somewhat confusingly, while the Second Circuit in Thomas, 757 F.2d 1359, held that a dog sniff at a front door of an apartment was a search, the Second Circuit more recently held that a dog sniff in the front yard of a home was not a search because the defendant "had no legitimate expectation of privacy in the front yard of his home insofar as the presence of the scent of narcotics in the air was capable of being sniffed by the police canine.” United States v. Hayes, 551 F.3d 138, 145 (2d Cir.2008) (citing Caballes, 543 U.S. at 409-10, 125 S.Ct. 834).

. See State v. Guillen, 222 Ariz. 81, 213 P.3d 230, 234 (App.2009) ("[W]e join the majority of jurisdictions in concluding that ... a dog sniff reaching into a home does not rise to the level of a ‘cognizable infringement’ under the Fourth Amendment to the United States Constitution."), vacated on other grounds, 223 Ariz. 314, 223 P.3d 658 (2010); Stabler v. State, 990 So.2d 1258, 1263 (Fla. 1st DCA 2008) (holding that dog sniff at front door of apartment was not a search within the meaning of the Fourth Amendment because "it did not violate a legitimate privacy interest”); People v. Guenther, 225 Ill.App.3d 574, 167 Ill.Dec. 705, 588 N.E.2d 346, 350 (1992) (applying Place and Jacobsen to conclude that "[sjince a canine sniff does not constitute a search, and the police had probable cause to believe there was marijuana in the living room, the police could have brought in the dog”); Hoop v. State, 909 N.E.2d 463, 468 (Ind.Ct.App.2009) (holding that dog sniff at front door of residence was not a search under the Fourth Amendment, explaining that "[ajs long as an officer is lawfully on the premises, the officer may have a dog sniff the residence without implicating the Fourth Amendment”); Fitzgerald v. State, 384 Md. 484, 864 A.2d 1006, 1017 (2004) ("[A] dog sniff of the exterior of a residence is not a search under the Fourth Amendment. To be sure, the dog and police must lawfully be present at the site of the sniff.”); People v. Jones, 279 Mich.App. 86, 755 N.W.2d 224, 228 (2008) (holding that dog sniff outside front door of home was not a search under the Fourth Amendment and explaining that "a canine sniff is not a search within the meaning of the Fourth Amendment as long as the sniffing canine is legally present at its vantage point when its sense is aroused”); People v. Dunn, 77 N.Y.2d 19, 563 N.Y.S.2d 388, 564 N.E.2d 1054, 1056 (1990) (holding dog sniff at door of apartment from common hallway was not a search within the meaning of the Fourth Amendment "[sjince the 'canine sniff’ conducted outside his apartment could reveal only the presence or absence of illicit drugs”); Romo v. State, 315 S.W.3d 565, 573 *68 (Tex.App.2010) ("[The dog's] sniffs of the garage door and the backyard fence [which were accessible from public alley] were not searches under the Fourth Amendment ... because he sniffed areas that were not protected from observation by passersby and because Romo had no reasonable expectation of privacy in the odor of marihuana coming from his backyard.”); Smith v. State, No. 01-02-00503-CR, 2004 WL 213395, at *4 (Tex. App.2004) (concluding that dog sniff of house's garage door was not a search under the Fourth Amendment and explaining that "[u]nlike the surveillance device used in Kyllo, a drug-dog sniff does not explore the details of a house” because it "can do no more than reveal the presence or absence of contraband”); Rodriguez v. State, 106 S.W.3d 224, 229 (Tex.App.2003) (holding that dog sniff of front door of private residence was not a search, reasoning that "a government investigative technique, such as a drug-dog sniff, that discloses only the presence or absence of narcotics, and does not expose noncontra-band items, activity, or information that would otherwise remain hidden from public view, does not intrude on a legitimate expectation of privacy and is thus not a 'search' for Fourth Amendment purposes”); Porter v. State, 93 S.W.3d 342, 346-47 (Tex.App.2002) (distinguishing Kyllo and holding that dog sniff of front door of home was not a search); see also Nelson v. State, 867 So.2d 534, 536-37 (Fla. 5th DCA 2004) (holding that dog sniff of hotel room door was not a search); but see State v. Ortiz, 257 Neb. 784, 600 N.W.2d 805, 816-17, 819 (1999) (holding that a dog sniff of a private residence implicates the Fourth Amendment by relying primarily on other state courts' decisions interpreting state constitutions); State v. Woljevach, 160 Ohio App.3d 757, 828 N.E.2d 1015, 1018 (2005) ("The information obtained from the drug-detecting dog is not available to support the warrant, because the use of the dog on appellant’s property was a search that, unlike using a drug-detecting dog to sniff around a vehicle on a highway or around luggage in a public place, must itself have been premised on probable cause.”).

. Even the dissenting justices in Caballes acknowledged that the United States Supreme Court has held that dog sniffs are not searches because they only reveal contraband in which there is no legitimate expectation of privacy protected by the Fourth Amendment. See Caballes, 543 U.S. at 411, 125 S.Ct. 834 (Souter, J., dissenting) ("At the heart both of Place and the Court’s opinion today is the proposition that sniffs by a trained dog are sui generis because a reaction by the dog in going alert is a response to nothing but the presence of contraband. Hence, the argument goes, because the sniff can only reveal the presence of items devoid of any legal use, the sniff 'does not implicate legitimate privacy interests’ and is not to be treated as a search.” (citations and footnote omitted)); Caballes, 543 U.S. at 421, 125 S.Ct. 834 (Ginsburg, J., dissenting) (“Dog sniffs that detect only the possession of contraband may be employed without offense to the Fourth Amendment, the Court reasons, because they reveal no lawful activity and hence disturb no legitimate expectation of privacy.”).

. As the highest court in Maryland explained, "The Supreme Court precedent [makes] clear that the status of a dog sniff does not depend on the object sniffed.” Fitzgerald, 864 A.2d at 1016. This is so because, as the highest court in New York explained, “[w]hether or not there exists a heightened expectation of privacy, the fact remains that a ‘canine sniff’ reveals only evidence of criminality.” Dunn, 563 N.Y.S.2d 388, 564 N.E.2d at 1057 (citations omitted).